**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANTOINE GORUM, | ) |
| Plaintiff, | ) Case No. 2:15-cv-00065-APG-GWF |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| CCII MS. CALDERWOOD, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on Plaintiff's Application for Leave to Proceed *in forma pauperis* (#3), filed on January 23, 2015.

**BACKGROUND**

Plaintiff alleges that Defendant Calderwood violated his First, Eighth, and Fourteenth Amendment rights by bringing false charges against him.  The charges resulted in Plaintiff being unjustly placed in solitary confinement.

**DISCUSSION**

**I.     Application to Proceed In Forma Pauperis**

Plaintiff filed this instant action and attached a financial affidavit to his application and complaint as required by 28 U.S.C. § 1915(a).  Reviewing Plaintiff's financial affidavit pursuant to 28 U.S.C. § 1915, the Court finds that Plaintiff is unable to pre-pay the filing fee. As a result, Plaintiff's request to proceed in forma pauperis in federal court is granted.

**II.     Screening the Complaint**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that

1  are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary

2  relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).

3       In addition to the screening requirements under § 1915A, pursuant to the PLRA, a federal

4  court must dismiss a prisoner's claims, "if the allegation of poverty is untrue," or if the action "is

5  frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary

6  relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a

7  complaint for failure to state a claim upon which relief may be granted is provided for in Federal

8  Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under Section 1915(e)(2)

9  when reviewing the adequacy of a complaint or amended complaint.

10      Review under Fed. R. Civ. P. 12(b)(6) is essentially a ruling on a question of law.  *See*

11 *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure

12 to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support

13 of the claim that would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th

14 Cir. 1999).  In making this determination, the Court takes as true all allegations of material fact

15 stated in the complaint, and the Court construes them in the light most favorable to the plaintiff.  *See*

16 *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations in a *pro se* complaint are

17 held to less stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449

18 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*).  While the standard

19 under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than

20 mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-1965 (2007).  A

21 formulaic recitation of the elements of a cause of action is insufficient.  *Id., See Papasan v. Allain,*

22 478 U.S. 265, 286 (1986).

23      All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the

24 prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal

25 conclusions that are untenable (*e.g.* claims against defendants who are immune from suit or claims

26 of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful

27 factual allegations (*e.g.* fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S. 319,

28 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

### III.     Instant Complaint

Plaintiff brings a claim under 42 U.S.C. § 1983 for violations of the 1st, 8th, and 14th Amendments.  42 U.S.C. § 1983 creates a path for the private enforcement of substantive rights created by the Constitution and Federal statutes.  *Graham v. Connor,* 490 U.S. 386, 393-94 (1989). In order to state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law."  *West v. Atkins,* 487 U.S. 42, 48-49 (1988)*; see also Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982).  A person acts under "color of law" if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West*, 487 U.S. at 49.  A prison official acts under the color of state law when acting in their official capacity.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

#### A.     First Amendment

Plaintiff alleges that Defendant violated his First Amendment rights by falsifying charges against him that resulted in Plaintiff's stay in "the Hold."  Plaintiff reports that he was locked in solitary confinement for 23 hours per day for 42 days.  During this time, he was bitten by a poisonous spider.  He alleges that the Defendant created the false disciplinary report to retaliate against Plaintiff for Plaintiff's pending lawsuit.  He claims that Defendant told Plaintiff that "you'll know next time not to file no law suits on people's (sic)."  (#13), p. 10.

In order to properly plead a retaliation claim under § 1983, a prisoner "must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."  *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam) citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  The prisoner must also submit evidence to establish a link between the retaliatory action and the prisoner's exercise of his or her constitutional rights.  *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  Finally, the prisoner must establish that his First Amendment rights were actually chilled by the retaliatory action.  *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2002).

3

1    Plaintiff pleads in his Second Amended Complaint that he was retaliated against for the

2   filing of a lawsuit.  The falsifying of disciplinary charges and the placement of Plaintiff in solitary

3   confinement constitute retaliatory actions.  Plaintiff established the link between the retaliatory

4   action and the lawsuit through his quoting of Defendant saying "you'll know next time not to file no

5   law suits on people's (sic)."  However, Plaintiff does not establish that this retaliatory impact has

6   chilled his First Amendment rights.  He does not describe any interruption in his ability to carry on

7   his lawsuit or in his willingness to continue with the case.  In his Eighth Amendment complaint, the

8   Plaintiff alleges that he was unable to visit the law library or use the phone during his time in

9   solitary confinement, but does not allege that these deprivations prevented him from exercising his

10   First Amendment rights.  Therefore, the Court will dismiss Plaintiff's Retaliation claim with leave

11   to amend.

12        **B.      Eighth Amendment**

13        Plaintiff argues that the falsifying of the disciplinary report and the 42 days he spent in

14   solitary confinement "for nothing at all" constitute cruel and unusual punishment.  Plaintiff claims

15   that he was unable to go to the law library, vocational class, church, or the chow-hall.  He also

16   claims he was bitten by a poisonous spider and was not given proper medical attention.  Prison

17   officials may only be held liable for injuries due to unsafe conditions of confinement "if they acted

18   with 'deliberate indifference to a substantial risk of harm.'"  *Antonetti v. Skolnik*, 748 F.Supp. 2d

19   1201, 1208 (D. Nev. 2010) quoting *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1988); *see also Farmer*

20   *v. Brennan*, 511 U.S. 825, 834 (1994).  There is a subjective and an objective element to the

21   deliberate indifference standard.  *Antonetti*, 748 F.Supp. 2d at 1208.  First, the deprivation alleged

22   must be, objectively, 'sufficiently serious.'"  *Id*. quoting *Farmer*, 511 U.S. at 834 (1994).  Second,

23   the prison official "must know of and disregard an excessive risk to inmate health and safety."  *Id*. at

24   1209 quoting *Farmer*, 511 U.S. at 837.

25        Plaintiff, in his First Amendment complaint, described the Defendant as displaying

26   "deliberate indifference" to the Plaintiff's safety.  He specifically cites the poisonous spider bite that

27   he suffered while in solitary confinement that he alleges was not treated for one and a half months.

28   "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under §

4

1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Denial of medical attention to prisoners constitutes an eighth amendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoners." *Toussaint v. McCarthy*, 801 F.23d 1090, 1111 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995).  When a prisoner alleges that his medical treatment was delayed, he must also allege that the delay in treatment led to further injury. *Antonetti*, 748 F.Supp. 2d at 1209 citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  Plaintiff does not sufficiently plead a claim for an 8th Amendment violation under § 1983. Plaintiff alleges that he was "throwing up and in pain."  (#13), p. 9.  He does not make any claims of deliberate indifference to his medical needs: there is no information in the complaint to indicate that the Defendant specifically knew that he had been poisoned, or that the Defendant declined to provide him with medical treatment.

Plaintiff also argues that his deprivation from social contact through church, time in the yard, the chow-hall, or vocational class was cruel and unusual punishment in violation of the 8th Amendment.  Though solitary confinement is a serious punishment for an inmate, the deprivations of trips to the chow-hall, the law library, vocational class, or the yard do not rise to the level of "sufficiently serious" as prescribed in *Farmer*.  Conditions of confinement may be harsh and restrictive without violating the Constitution.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1991). Additionally, Plaintiff must establish that Defendant was "deliberately indifferent" to the harsh conditions of Plaintiff's confinement. *Wilson v. Seiter*, 501 U.S. 294 (1991).  Therefore, the Court will dismiss Plaintiff's 8th Amendment claim with leave to amend.

## C.     Fourteenth Amendment

Plaintiff cites Ninth Circuit precedent as support for his argument that an unjustified allegation resulting in a disciplinary action against a prisoner violates due process. *Nonnette v. Small*, 316 F.3d 872, 878-79 (9th Cir. 2002); *Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999).  An inmate's right to procedural due process only arises when a constitutionally protected liberty or property interest is at stake. *Cepero v. High Desert State Prison*, Case No. 3:12-cv-263-MMD-VPC, 2015 WL 1308690 at *13 (D. Nev. 2015) citing *Wilkinson v. Austin*, 545 U.S. 209,

5

221 (2005).  An inmate does not have a liberty interest related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose."  *Cepero*, 2015 WL 1308690 at *13 citing *Sandin v. Connor*, 515 U.S. 472, 478 (1995).  A prisoner has no right to remain in the prison's general population.  *Sandin*, 515 U.S. at 485-86.  "[T]he hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate the due process clause because there is no liberty interest in remaining in the general population."  *Cepero*, 2015 WL 1308690 at *13 quoting *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995).  However, "Plaintiff may show a protected liberty interest not by reference to the language of NDOC procedural regulations, but instead by demonstrating that the administrative segregation to which he was subjected rises to the level of 'atypical and significant hardship.'"  *Cepero*, 2015 WL 1308690 at *13 citing *Sandin*, 515 U.S. at 483-84.

   To determine if the Plaintiff's removal to solitary confinement constitutes an "atypical and significant hardship," the Court examines: (1) the extent of difference between segregation and general population; (2) the duration and intensity of the conditions confinement; and (3) whether the sanction extends the length of the prisoner's sentence.  *Cepero*, 2015 WL 1308690 at *14; *see also Sandin*, 515 U.S. at 486-87.  "Typically, administrative segregation in and of itself does not implicate a protected liberty interest."  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).  Furthermore, "the decision to hold an inmate in administrative segregation imposes few procedural burdens on prison officials."  *Cepero*, 2015 WL 1308690 at *14.  A prison official provides adequate due process by "holding an informal, non-adversarial evidentiary hearing within a reasonable time after administrative segregation begins."  *Id*.

   Plaintiff detailed the differences between segregation and the general population in his Amended Complaint: he could not go to the library, go to church, use the phone, or visit the chow-hall.  He had to shower and visit the yard in handcuffs.  He was kept in his cell for up to 23 hours per day for 42 days.  Similar conditions of solitary confinement have been found to weigh in Plaintiff's favor under the first factor.  *See Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988 (9th Cir. 2014) (finding that 23 hours per day of solitary confinement with almost no

6

interpersonal contact for 27 months constituted an atypical and significant hardship).  The second

*Sandin* factor does not weigh in Plaintiff's favor.  Though the Ninth Circuit has held that a two

month segregation is sufficient to weigh in Plaintiff's favor, that case revolved around a

handicapped prisoner being placed in a non-handicap-accessible housing unit, and is distinguishable

from a case involving a normal prisoner being placed in solitary confinement.  *Serrano*, 345 F.3d at

1078.  Forty-two (42) days in solitary confinement is substantially less than that suffered in *Brown*,

751 F.2d at 988, where the plaintiff was held in solitary for 27 months, or in *Cepero*, where the

plaintiff was segregated for 19 months.  Finally, as in *Cepero*, Plaintiff does not allege that the time

spent in solitary confinement caused his sentence to be extended.  Taken altogether, Plaintiff's

claims are insufficient to establish that his time in solitary confinement caused him to suffer

"atypical hardship," and therefore he does not establish that he had a liberty interest that demanded

due process guarantees.  Should he have a liberty interest that demands due process, it appears that

due process has been provided.  Plaintiff alleges that he met with a counselor after two weeks to

discuss the allegations against him, and that the charges were eventually dropped.  A 42 day

disciplinary process comports with due process as required by the Constitution.  *See Toussain v.*

*McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990) (holding that review of administrative segregation

decision every 120 days "satisfies due process").

However, the requirements of *Sandin* do not apply when the disciplinary action is not

supported by any evidence.  *Nonnette*, 316 F.3d at 878-79.  A disciplinary decision that is

unsupported by evidence, when made without a fair hearing in which Plaintiff could defend himself,

violates due process.  *Id*.  Plaintiff complains that there was no basis for the Defendant's conclusion

to place him in solitary confinement, and that the Defendant was aware that there was no basis for

such a conclusion.  He claims that the decision to place him in solitary confinement was unjustified,

and he makes reference to another official at the prison dismissing the charges the Defendant placed

against him.  The Plaintiff also indicates that he met with another official after two weeks in solitary

confinement, where he was informed of the charges against him.  The charges were later dismissed

by an unnamed lieutenant.  It is unclear from the limited facts presented how the disciplinary

process worked in this instance.  Plaintiff does not indicate if this was a conversation, a review of

7

his file, or an actual evidentiary hearing.  Furthermore, it is unclear when the charges were dropped. The Court cannot determine from the limited facts if the Plaintiff properly states a claim based on the holdings of *Nonnette*.  Therefore, the Court will dismiss the Plaintiff's 14th Amendment complaint with leave to amend.

If Plaintiff elects to proceed in this action by filing an amended complaint, he is informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. Local Rule 15–1 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Application to Proceed *in Forma Pauperis* (#3) is **granted**.  Plaintiff shall not be required to pay an initial partial filing fee.  However, even if this action is dismissed, the full filing fee must still be paid pursuant to 28 U.S.C. § 1915(b)(2).

**IT IS FURTHER ORDERED** that the movant herein is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor.  This Order granting *forma pauperis* status shall not extend to the issuance of subpoenas at government expense.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(b)(2), the Nevada Department of Corrections shall pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to Plaintiff's account (inmate #65115), in the months that the account exceeds $10.00, until the full $350 filing fee has been paid for this action. The Clerk of the Court shall send a copy of this Order to the Finance Division of the Clerk's Office. The Clerk shall also send a copy of this Order to the attention of the Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702.

. . .

. . .

8

**IT IS FURTHER ORDERED** that Plaintiff's Complaint be **dismissed** without prejudice with leave to amend.  Plaintiff shall have until **November 23, 2015** to file an amended complaint correcting the noted deficiencies.

DATED this 20th day of October, 2015.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge